IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM F. BINKERT, JR.,          )
        Plaintiff,          )
                                  )
    v.                            )    Civil Action No. 05-1448
                                  )
                                  )
COMMISSIONER OF SOCIAL            )
SECURITY,                         )
        Defendant.          )

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the defendant's motion for summary judgment (Docket No. 9) be denied, that the plaintiff's motion for summary judgment or, in the alternative, remand (Docket No. 6), be granted, and that this action be remanded to the Commissioner for further review.

II.    Report

Presently before the Court for disposition are cross motions for summary judgment and the plaintiff's alternative motion to remand.

On October 18, 2005, William F. Binkert, Jr., by his counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), for review of the Commissioner's final determination terminating his receipt of disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423.

On November 19, 2001 and again on February 27, 2002, the plaintiff was notified that his continued receipt of disability benefits would terminate (R.31-36). On March 13, 2002, the

plaintiff requested reconsideration of this determination (R.37-39), and upon reconsideration, and in a decision dated June 24, 2002, continuation of benefits was again denied (R.48-49). On July 1, 2002, the plaintiff requested a hearing (R.60-62) and pursuant to that request a hearing was held on January 15, 2003 (R.21-30). In a decision dated April 10, 2003, continued benefits were denied (R.11-19), and the plaintiff requested reconsideration of that determination (R.9). Upon reconsideration and in a decision dated August 26, 2005, the Appeals Council affirmed the prior determination (R.3-6). On October 18, 2005, the instant complaint was filed.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his burden of demonstrating that he continued to be disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)." Richardson v. Perales, supra, at page 401; Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

At the hearing held on January 15, 2003 (R.21-30), the plaintiff appeared without counsel (R.23-24) and testified that he was born on October 16, 1960 (R.24); that he completed 11th grade

(R.25); that he had not worked in the past fifteen years and was awarded Social Security disability benefits on January 31, 1983 (R.25) and that his previous work was as a sweeper (R.25).

The plaintiff also testified that he experiences a dislocating knee tendon (R.25); that he wears a knee brace (R.26); that his shoulder seems to be all right (R.26); that he takes medication for knee pain (R.26) and that he does not do anything all day (R.27).

At the hearing a vocational expert was called upon to testify (R.28-29). The witness was asked to assume an individual who could only perform sedentary work or light work with a sit/stand option and replied that a large number of such positions existed in the local and national economy (R.28-29).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was no longer disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. § 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding

sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. § 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed.

The plaintiff was hospitalized at Allegheny General Hospital from July 17, 1995 through July 18, 1995 where a lateral right knee release and fourth metatarsal shortening were performed (R.93-95).

The plaintiff was hospitalized at Allegheny General Hospital from February 20, 1997 through February 21, 1997 for shoulder popping and pain. A right shoulder acromioplasty and subacromial decompression were performed (R.96-98).

The plaintiff was hospitalized at Allegheny General Hospital from January 19, 1998 through January 20, 1998 for shortening of his fourth left metatarsal (R.99-101).

The plaintiff was hospitalized at Allegheny General Hospital from September 10, 1998 through September 11, 1998 for left shoulder pain. An acromioplasty was performed (R.102-104).

The plaintiff was treated at Allegheny General Hospital on April 10, 1999 for a left ankle fracture (R.105-109).

Dr. Richard L. Ray performed an open reduction of the left ankle fracture on April 12, 1999.  The plaintiff continued to be treated by Dr. Ray between April 12, 1999 and June 12, 2001 for left ankle cellulitis, bilateral knee pain, right shoulder lipoma and ankle pain.  The use of knee braces was recommended (R.110-121).

The plaintiff was treated by Dr. Bernard A. Andrews between May 17, 1994 and October 24, 2001 for a hand injury, shoulder and hip pain, foot and nail fungus, small penile vericosities, strained back, balance difficulty, groin adenopathy and hives. He received frequent prescriptions for pain medication, antibiotics and anti-fungal agents (R.122-147).

The plaintiff was examined on February 8, 2002 by Dr. Shelana Gibbs-McElvy who diagnosed bilateral leg pain secondary to knee surgeries. It was observed that the plaintiff could lift twenty-five pounds frequently, fifty pounds occasionally, and stand/walk for one to two hours alternating with sitting (R.148-154).

After reviewing the medical evidence and in a residual functional capacity assessment completed on February 25, 2002, it is noted that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand, walk or sit for about six hours (R.155-165).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms.  Baerga v. Richardson, 500

F.2d 309 (3d Cir. 1974). As the court stated in Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

In Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated:

> Bittel seeks to help those claimants with cases that so often fall within the spirit-- but not the letter--of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§ 404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he can do his past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he can exert in engaging in work activity), and if his impairment enables him to do sustained work of a sedentary, light or medium nature, and the findings of age, education and

work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

> Based on the evidence presented, the Commissioner concluded:
>
> The claimant was originally found disabled and eligible for Disability Insurance Benefits as of the established onset date of January 31, 1983. He began receiving benefits and continued to do so through June 1988, when it was determined that his disability had ceased. The claimant disputed the determination and requested a hearing on the issue. On May 13, 1991, after a hearing, a decision was issued finding the claimant's disability had continued. A review of the record in 1995 found the claimant's disability continuing.
>
> The record was reviewed again in 2002. On this review, it was determined that there was a medical improvement in the claimant's condition, and that the claimant's disability had ceased as of March 2002.
>
> * * *
>
> The orthopedic evidence indicates that the claimant has congenital dislocating patellar tendons that have required 12 surgeries (by history) between the bilateral knees. Since 1995, the claimant had a right shoulder acromioplasty and decompression in 1997, and a left shoulder acromioplasty in 1998. In 1999, the claimant fractured his left ankle. He was full weight bearing six weeks post injury.
>
> * * *
>
> On February 13, 2002 the claimant was evaluated ... in connection with his disability review. The claimant was noted to be able to walk into the room with no assistive device. He had no difficulty squatting. He had no difficulty walking on his ankles or heels. He had no muscular atrophy. He had muscle strength of +5/5. Range of motion was full in all joints. Dr. Gibbs-McElvy formed the impression that the claimant had bilateral lower extremity pain, most likely secondary to his previous patellar surgeries. She limited the claimant to lifting and carrying 25

pounds frequently and 50 pounds occasionally. Standing and walking was limited to one to two hours over an eight hour day and sitting limited to 8 hours with a sit/stand option. The claimant could perform all postural activities on an occasional basis.

Based on the medical evidence, I find that the claimant has the severe impairment of bilateral lower extremity pain status post patellar surgeries. The impairment is not severe enough to meet or medically equal one of the impairments listed... The claimant is able to ambulate effectively.

A determination must therefore be made whether he retains the residual functional capacity to perform the requirements of his past relevant work or other work existing in significant numbers in the national economy. After considering all the evidence, I find the claimant retains the residual functional capacity for light exertion with a sit/stand option.

In making this assessment, I have given weight to the comprehensive evaluation provided by the consulting examiner in February 2002, as well as to the intermittent records provided by the claimant's primary physician since 1995 that are generally consistent with the consulting evaluation. Essentially, the claimant has chronic knee pain, which appears to be ameliorated with pain medication. He does not seem to require significant medical treatment. He does not even see his physicians all that often. There are no reported orthopedic office visits related to the claimant's knees since 1995. To the contrary, orthopedic treatment has been sought for acute symptoms related to the shoulder problem and an ankle injury that have responded promptly. When the claimant does see his primary physician, treatment is ... mostly for general health problems. According to the consulting examiner, the claimant's range of motion of all joints is complete. His muscle strength is reported as full. There are no signs of atrophy. Even with his knee problems, the claimant could walk, squat, stoop, bend, kneel, balance and climb. I believe light exertion is completely consistent with the claimant's daily activities and more than amply allows for the pre and post surgical deformities in the claimant's knees, particularly with the added provision of a sit/stand option. I note that the state agency medical reviewer also concluded that the claimant could perform light work.

While I have considered the claimant's complaints of pain and the extent to which it can reasonably be accepted as consistent with the objective medical evidence and other evidence ... in general, I did not find the claimant's testimony credible. Although the claimant may feel the effects of some pain and stiffness, I have allowed for it within the residual functional capacity established. Overall, the claimant performs activities at home that are consistent with an even greater degree of exertion. At the hearing, the claimant stated that he did "nothing" all day. Yet, the record shows that the claimant is completely independent in his

personal care. He can shower and dress himself, including putting on his shoes, socks, and pants. On one of the questionnaires, the claimant stated that he did some light cleaning and the dishes. He can make a bed without resting. Although the claimant alluded to needing to have his wife drive him to the hearing and that only his "wife drives", the record shows that he does drive without difficulty and regularly takes his children to their after school activities. He also provides childcare after school. He is able to do the grocery shopping and load and unload the bags from the car. The medical record also shows that the claimant even moved heavy furniture on occasion. Recreationally, the claimant said that he enjoys fishing and occasionally attends car races in the summer. The claimant's allegations that he needs to soak in hot baths twice a day or "stay in bed and rest for a day or so" are simply not supported in the medical evidence. For all these reasons, I am suspect of the claimant's allegations, and believe I have made adequate allowance for any pain the claimant feels within the residual functional capacity established.

* * *

Since the claimant's ability to perform all or substantially all of the requirements of light work is impeded by need for a sit/stand option, an impartial vocational expert was used ...

Based on the testimony of the vocational expert, I have concluded that considering the claimant's age, educational background, work experience, and residual functional capacity, he is capable of making a successful adjustment to work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore reached...

As I have found that the claimant is not disabled, I also find that there has been medical improvement in the claimant's condition in comparison to the 1995 determination. Since March 2002, the claimant has retained the capacity for work that exists in significant numbers in the national economy. The claimant is no longer under a "disability" as defined in the Social Security Act, his disability having ceased as of March 2002 (R.14-18).

The plaintiff raises the following issues: 1) the ALJ failed to compare his current medical evidence to records at the time his benefits were last confirmed and connect any improvement to his ability to do work; and 2) the ALJ failed to adequately develop the record, particularly given the fact that the plaintiff appeared at the hearing without counsel.

In the case of a termination of benefits, the Regulations provide that:

9

> For purposes of determining whether medical improvement has occurred, we will compare the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled to the medical severity of that impairment(s) at that time. If medical improvement has occurred, we will compare your current functional capacity to do basic work activities (i.e., your residual functional capacity) based on this previously existing impairment(s) with your prior residual functional capacity in order to determine whether the medical improvement is related to your ability to do work. The most recent favorable medical decision is the latest decision involving a consideration of the medical evidence and the issue of whether you were disabled or continued to be disabled which became final.

20 C.F.R. § 404.1594(b)(7). The Court of Appeals has held that, "in a termination proceeding, after the claimant has introduced evidence that his or her condition remains essentially the same as it was at the time of the earlier determination, the burden shifts to the [Commissioner] to 'present evidence that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity." Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1987) (citation omitted).

The ALJ did not conduct a comparative analysis of the medical evidence. Indeed, the medical evidence from the most recent favorable medical decision that the plaintiff was disabled, rendered in 1995, is not even in the record.

In Reefer v. Barnhart, 326 F.3d 376 (3d Cir. 2003), the Court of Appeals concluded that an ALJ failed to adequately develop the record when the plaintiff, who appeared pro se, was given a 20-minute hearing at which the ALJ did not follow up on her brief statements about her stroke and did not ask her to describe her pain, her daily activities and limitations, how much she could lift, how far she could walk, how long she could sit or stand without discomfort and whether she had any difficulty concentrating. Id. at 380-81.

In this case, the plaintiff also appeared pro se. The Commissioner argues that this fact alone is insufficient to justify a remand, citing <u>Livingston v. Califano</u>, 614 F.2d 342, 345 (3d Cir. 1980). However, that is not the issue. As the court explained in <u>Reefer</u>:

> An ALJ owes a duty to a pro se claimant to help him or her develop the administrative record. "When a claimant appears at a hearing without counsel, the ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" <u>Key v. Heckler</u>, 754 F.2d 1545, 1551 (9th Cir. 1985) (quoting <u>Cox v. Califano</u>, 587 F.2d 988, 991 (9th Cir. 1978)); <u>Dobrowolsky [v. Califano</u>], 606 F.2d [403,] 407 [(3d Cir. 1979)] (noting that an ALJ must "assume a more active role when the claimant is unrepresented"). <u>See generally</u> <u>Ventura v. Shalala</u>, 55 F.3d 900, 902 (3d Cir. 1995) ("ALJs have a duty to develop a full and fair record in social security cases.").

326 F.3d at 380. The ALJ did not help the plaintiff develop the record. Although the plaintiff testified that he continued to receive treatment from Dr. Andrews between October 24, 2001 and January 15, 2003 (R.27), the ALJ did not try to obtain or explain why the record contained no records dated after October 24, 2001.

In addition, the hearing in this case lasted only 8 minutes (12 minutes less than in <u>Reefer</u>), including the time for the vocational expert's testimony. As in <u>Reefer</u>, the ALJ made no attempt to follow up on the plaintiff's testimony, which was that "I still have the same medical problems," his knees were "not getting any better," that he takes three to four Vicodin a day for pain and that he spends the entire day at home (R.25-27). The ALJ did not ask the plaintiff what he meant when he said his knees were not getting any better, how far he could walk and for how long, how the pain affects him or what, if any, were the side effects of the pain medication.

Instead, the ALJ proceeded to find the plaintiff's testimony "inconsistent" with questionnaires he completed, concluded that the record contained no reported orthopedic office

visits related to his knees since 1995 and found that the plaintiff essentially has knee pain that is ameliorated with pain medication.  However, these conclusions are not supported by the record.

The plaintiff had a lateral release of his right knee on July 17, 1995 (R.93-95), had arthroscopy and partial synovectomy of his left knee on January 19, 1998 (R.100-01), and had many office visits at which pain medication and braces were prescribed for his knees (R.112-21, 133-34, 137-38).

The ALJ did not explore the inconsistencies between the plaintiff's testimony at the hearing and the answers in the questionnaires.  Moreover, it is noted that the plaintiff did not complete the questionnaires himself.  Rather, they were completed by a Social Security worker from prior files (R.81).  Although the plaintiff testified that he completed the eleventh grade, the record is devoid of evidence that he had the educational ability to do the jobs the vocational expert identified, such as cashier, order clerk and information clerk.

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law.  Biener v. Calio, 361 F.3d 206 (3d Cir. 2004).  In the instant case, there are no material factual issues in dispute, and it appears that the Commissioner's conclusion is not supported by substantial evidence.  For this reason, it is recommended that the defendant's  motion for summary judgment (Docket No. 9) be denied, that the plaintiff's motion for summary judgment or, in the alternative, remand (Docket No. 6), be granted, and that this action be remanded to the Commissioner for further review.

Within ten days after being served with a copy, any party may serve and file written objections to the report and recommendation.  Any party opposing the objections shall have

seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                Respectfully submitted,

                s/ROBERT C. MITCHELL,
                United States Magistrate Judge

Dated: March 8, 2006.